**IOWA RIGHT TO LIFE COMMITTEE, INC., Plaintiff,**

v.

**W. Charles SMITHSON, in his official capacity as Iowa Ethics and Campaign Disclosure Board Executive Director; James Albert, John Walsh, Patricia Harper, Gerald Sullivan, Saima Zafar, and Carole Tillotson, in their official capacities as Iowa Ethics and Campaign Disclosure Board Members; and John Sarcone, in his official capacity as Polk County Attorney, Defendants.**

No. 4:10–cv–00416.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 20, 2010.

Adam C. Gregg, Brian P. Rickert, Sean P. Moore, Brown Winick Graves Gross Baskerville & Schoenebaum PLC, Des Moines, IA, James Bopp, Jr., Jared Haynie, Joseph E. La Rue, Kaylan L. Phillips, Richard E. Coleson, Bopp Coleson & Bostrom, Terre Haute, IN, for Plaintiff.

Jeffrey S. Thompson, Attorney General of Iowa, Michael Bernard Omeara, Des Moines, IA, for Defendants.

### ORDER

ROBERT W. PRATT, Chief Judge.

On September 7, 2010, Iowa Right to Life Committee, Inc. ("IRTL") filed a "Verified Complaint for Declaratory and Injunctive Relief" against the above-captioned government officials (collectively, "Defendants"), alleging that several provisions of Iowa's campaign finance laws violate the First and Fourteenth Amendments of the United States Constitution. Clerk's No. 1. On the same date, IRTL also filed a Motion for Preliminary Injunction, which is currently before the Court.[1] Defendants filed their responses in opposition to IRTL's motion for a preliminary

---

1. IRTL also filed a motion to consolidate the preliminary injunction hearing with a trial on the merits. Clerk's No. 6. That motion is denied. *See* Fed.R.Civ.P. 65(a)(2).

injunction on September 14, 2010. Clerk's Nos. 20, 22. The Court held a hearing on the motion on September 15, 2010. *See* Clerk's No. 23. The matter is fully submitted.

## I. FACTUAL BACKGROUND

### A. *Recent Changes to Iowa Law*

1. *Pre-existing Iowa law.*

Prior to January 2010, the Iowa Code banned corporations from making both independent expenditures and campaign contributions. It provided that:

> Except as provided in subsections 3 and 4, it is unlawful for an insurance company, savings and loan association, bank, credit union, or corporation organized pursuant to the laws of this state, the United States, or any other state, territory, or foreign country, whether for profit or not, or an officer, agent, or representative acting for such insurance company, savings and loan association, bank, credit union, or corporation, to contribute any money, property, labor, or thing of value, directly or indirectly, to a committee, or to expressly advocate that the vote of an elector be used to nominate, elect, or defeat a candidate for public office, except that such resources may be so expended in connection with a utility franchise election held pursuant to section 364.2, subsection 4, or a ballot issue. All such expenditures are subject to the disclosure requirements of this chapter.

Iowa Code § 68A.503(1) (2009).[2]

However, while corporations were banned from using their own general trea-

sury funds to make independent expenditures and contributions directly, they were allowed to do these things indirectly through political committees.[3] *See id.* § 68A.503(3) (allowing corporations to engage in election-related activities by sponsoring and financing their own "committees"); § 68A.102(8) (defining "committee" to "include[ ] a political committee and a candidate's committee"). A "political committee" was defined, in relevant part, as:

> An association, lodge, society, cooperative, union, fraternity, sorority, educational institution, civic organization, labor organization, religious organization, or professional organization that ... makes expenditures in excess of seven hundred fifty dollars in the aggregate ... in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office....

*Id.* § 68A.102(18)(b). If an organization "was originally organized for purposes other than engaging in election activities," but temporarily engaged in activities covered by § 68A.102(18), that organization was deemed a "permanent organization" and required to organize a political committee. *Id.* § 402(9). Both political committees and permanent organizations were required to segregate their election-related funds. *See id.; id.* § 68A.203(2)(d).

In addition to these provisions, § 68A.404(3) required disclosure from any "person, other than a committee registered under this chapter" who made independent expenditures. The statute defined an independent expenditure as "one or more

---

**2.** Except as otherwise indicated, the Court's citations to the Iowa Code refer to the current version of the code, as amended in April 2010.

**3.** It also appears that there was an exception in the Iowa Administrative Code rules allowing corporations that qualified as "political

corporations" to make independent expenditures. *See* Advisory Op. 2010–03 (Clerk's No. 20–1 at 12) (referring to Iowa Admin. Code r. 351–4.50). This rule was rescinded, effective May 2010. *See* Vol. XXXII Iowa Admin. Bulletin, No. 25 at 2713, Item 18, June 6, 2010.

expenditures in excess of one hundred dollars in the aggregate for a communication that expressly advocates the nomination, election, or defeat of a clearly identified candidate ... without the prior approval or coordination with a candidate [or] candidate's committee." *Id.* § 68A.404(1). The statute expressly distinguished between persons covered by § 68A.404(3) and political committees. *See id.* § 68A.404(3)(b) ("This section *does not apply* to ... a political committee.") (emphasis added).

### 2. *The Supreme Court's Opinion in* Citizen's United.

In January 2010, the United States Supreme Court issued its opinion in *Citizens United v. Federal Election Commission.* *See* —— U.S. ——, 130 S.Ct. 876, 886, 175 L.Ed.2d 753 (2010). The federal statute at issue in *Citizens United* barred corporations "from using general treasury funds to make direct contributions to candidates or independent expenditures that expressly advocate the election or defeat of a candidate" in certain federal elections. *Id.* at 887 (citing 2 U.S.C. § 441b). The statute, however, allowed corporations to establish "a 'separate segregated fund'(known as a political action committee, or PAC) for these purposes." *Id.* Although § 441b applied to contributions and independent expenditures, the Supreme Court limited its discussion to independent expenditures. *See id.* at 909 ("Citizens United has not made direct contributions to candidates, and it has not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny.").

The Supreme Court stated that, as it pertained to independent expenditures, § 441b was a ban on corporate speech. *Id.* at 897. The Court reasoned that a PAC is a separate entity from the corporation itself; therefore, even though the statute allowed PACs to speak, it still did not

allow the corporations themselves to speak. *Id.* Because the statute was a ban on speech, the Supreme Court analyzed it under strict scrutiny. *Id.* at 888. A previous Supreme Court case, *Austin v. Michigan Chamber of Commerce,* had upheld restrictions based on the fact that a speaker was a corporation. *See id.* at 903 (citing *Austin v. Mich. Chamber of Commerce,* 494 U.S. 652, 695, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990)). But in *Citizens United,* the Supreme Court overruled that portion of *Austin* and concluded that "the Government may not suppress political speech on the basis of the speaker's corporate identity" because "[n]o sufficient governmental interest justifies" banning speech on that basis. *See id.* at 913. Accordingly, the Court held that the federal ban on corporate independent expenditures was invalid. *Id.*

Notably, although the Supreme Court struck down the federal ban on independent expenditures, it upheld federal disclosure and disclaimer requirements for independent expenditures. *Id.* at 913–14. The Supreme Court stated that "the public has an interest in knowing who is speaking about a candidate shortly before an election," and concluded that this informational interest alone was sufficient to justify the federal disclosure requirements. *Id.* at 915–16. The Supreme Court also touted the benefits of prompt disclosures:

With the advent of the Internet, prompt disclosure of expenditures can provide shareholders and citizens with the information needed to hold corporations and elected officials accountable for their positions and supporters. Shareholders can determine whether their corporation's political speech advances the corporation's interest in making profits, and citizens can see whether elected officials are in the pocket of so-called moneyed interests. The First Amendment protects political speech; and disclosure

permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.

*Id.* at 916 (internal quotation marks and citations omitted).

Therefore, under *Citizens United*, "[t]he Government may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether." *Id.* at 886.

### 3. Iowa's response.

#### a. Amendments to the Iowa Code.

In response to *Citizens United*, the Iowa Legislature passed several amendments to Iowa's campaign-finance laws. Defs.' Resp. to Pl.'s Mot. for Prelim. Inj. (hereinafter "Defs.' Br.") at 3 (Clerk's No. 20); Smithson Aff. ¶ 5 (Clerk's No. 20–1); Prelim. Inj. Hr'g Tr. (hereinafter "Hr'g Tr.") 37:3–7 (Clerk's No. 35); Senate File 2354, 83rd G.A., 2d. Sess., *as reprinted in* 2010 Iowa Legis. Serv. S.F. 2354 (West) (hereinafter "S.F. 2354"). Most significantly, the Iowa Legislature deleted the text of § 68A.503 in its entirety and replaced it with new language, eliminating the ban on corporate independent expenditures and narrowing the scope of banned contributions. *See* S.F. 2354 § 5. The new text of § 68A.503 also exempted the use of corporate "funds for independent expenditures as provided in section 68A.404." Iowa Code § 68A.503(4)(d).

The Iowa Legislature made other notable changes. It amended the definition of an "independent expenditure" to change the threshold from one hundred dollars to seven hundred fifty dollars. S.F. 2354 § 3 (amending Iowa Code § 68A.404(1)). The Iowa Legislature also added a requirement that organizations "other than an individual or individuals" obtain approval by "a majority of the entity's board of directors,

executive council, or similar organizational leadership body" before using general treasury funds for independent expenditures. *See id.* (amending Iowa Code § 68A.404(2)(a)-(b)). Finally, the Iowa Legislature also made a number of changes related to independent expenditure reporting, including a requirement that persons covered by § 68A.404(3) file a "termination report" if they decide to stop making independent expenditures. *See id.* §§ 2–3. All of these amendments became effective on April 8, 2010. *Id.* § 7.

In particular, the Iowa Legislature did not make any changes to § 68A.102. *See id.* §§ 1–7. Section 68A.102 provides definitions to be used in Chapter 68A "unless the context otherwise requires." Iowa Code § 68A.102. Therefore, the definitions of "political committee" and "permanent organization" remain the same. *See* S.F. 2354 §§ 1–7. The Iowa Legislature also did not change the portions of § 68A.404(3) that limited that section's applicability to any "person, other than a committee registered under this chapter" or that expressly excluded political committees from its scope. *See id.* § 3. Therefore, it is still clear, from the plain text of the statute, that the persons covered by § 68A.404(3) are a separate category from committees, including political committees. *See* Iowa Code §§ 68A.404, 404(3).

However, by removing the ban on corporate independent expenditures and not amending the definitions, the Iowa Legislature unearthed some previously latent ambiguity as to the proper interplay between § 68A.404(3) and § 68A.102(18). *See* S.F. 2354 § 5 (striking the former version of § 68A.503 in its entirety). That ambiguity stems from the overlap between the scope of § 68A.404(3) and the definition of a "political committee" in § 68A.102(18). If an organization has not yet "registered as a committee," but

makes an independent expenditure totaling more than $750.00, it would fall under the plain text of both sections. *See* Iowa Code §§ 68A.404(3), 68A.102(18). But, based on the plain text of § 68A.404, it cannot be both a political committee and also "a person, other than a committee." *See* Iowa Code § 68A.404(3), (3)(b). Prior to the April 2010 amendments, this tension was ameliorated by § 68A.503, at least as to corporations. Because the former text of § 68A.503 barred corporations from making independent expenditures, they could not lawfully take actions within the scope of § 68A.404(3)(b) without forming a political committee. *See* Iowa Code § 68A.503(1)-(3) (2009). Therefore, under the pre-April 2010 statute, the choice between these two definitions was simple—corporations had to be covered by § 68A.102(18), not § 68A.404(3). The current text of the statute, however, does not clarify how these two sections should be applied when an organization arguably falls under both definitions.

b. *Amendments to the Iowa Administrative Code rules.*

In addition to amending the text of the statute, the Iowa Legislature authorized the Iowa Ethics & Campaign Disclosure Board (the "Board") to promulgate emergency rules to implement the new provisions in time for the June 2010 primary. S.F. 2354 § 6. Accordingly, the Board made a number of changes to the existing rules, and added a number of new provisions, effective May 17, 2010. Vol. XXXII Iowa Admin. Bulletin, No. 25 (hereinafter "IAB") at 2706–14, June 6, 2010; *see also* Smithson Aff. ¶ 6; Defs.' Br. at 3. Two of these changes are particularly relevant to the instant case.

First, the Board created a new category of regulated entities called "independent expenditure committees." IAB at 2707, Item 1 (adding "new paragraph 4.1(1)'d' "). Although the Board decided to call this new category of entities "independent expenditure committees," it did not make them a subset of "committees." *See* Iowa Admin. Code r. 351–4.1(1).[4] Instead, the Board amended the rules to create three separate categories of regulated entities, each subject to different reporting requirements, specifically: (1) "committees" (including "political committees," also known as "PACs"); (2) "permanent organizations temporarily engaging in political activity"; and (3) "independent expenditure committees." *Id.; see also id.* r. 351–4.27(68A) (distinguishing between the reporting required of "independent expenditure committees" and "committees").

The Board defined an "independent expenditure committee" as an organization that is required to file an independent expenditure statement under § 68A.404(3). *See id.* r. 351–4.1(1)(d) ("A person that is required to file campaign disclosure reports pursuant to 2009 Iowa Code Supplement section 68A.404(3) 'a' as amended by 2010 Iowa Acts, Senate File 2354, section 3, due to the filing of an independent expenditure statement (Form Ind–Exp–O) shall be referred to as an 'independent expenditure committee.' "); *see also id.* at 2708, Item 7 (amending rule 351–4.27(68A) to provide that organizations making independent expenditures must file Form Ind–Exp–O, while individuals making independent expenditures must file Form Ind–Exp–I). Strikingly, the term "independent expenditure committee" does not appear in the statute. *See* Iowa Code §§ 68A.404, 68A.102. However, the Court adopts the Board's definition of an independent expenditure committee for the purposes of this opinion.

**4.** Unless otherwise indicated, the Court's citations to the Iowa Administrative Rules refer to the current version of those rules, as amended effective May 2010.

Second, the Board made changes to its substantive rules regarding the reporting of independent expenditures. For example, the Board created a separate set of reporting requirements for independent expenditure committees.[5] IAB at 2707, Item 3 (adding "new subrule 4.9(15)"). The Board also amended its rule regarding dissolution to state that independent expenditure committees are not required to file final bank statements when they file termination reports. *See id.* at 2713, Item 22 (amending rule 351–4.55(5)).

B. *The Parties and This Lawsuit*

IRTL is a "non-stock, nonprofit Iowa corporation" that is classified as a social welfare organization under 26 U.S.C. § 501(c)(4). Compl. ¶¶ 6, 15. IRTL is the Iowa affiliate of the National Right to Life Committee, Inc. *Id.* ¶ 14. According to IRTL, its "primary purpose" is "to present factual information" on various social issues, including abortion and euthanasia and "its major purpose is not and will never be the nomination or election of candidates." *Id.* ¶¶ 14–15. Defendants are various governmental officers who have the power to enforce the challenged provisions of Iowa's campaign-finance laws.[6] *See id.* ¶¶ 8–10.

At some point in August, "an attorney from the office of IRTL's lead counsel contacted [the Board's] Legal Counsel, Charles Smithson, regarding the issue of ongoing reporting" Compl. at 14 n. 12; Smithson Aff. ¶ 7. But IRTL's counsel did not mention IRTL in that call. Smithson Aff. ¶ 7. And IRTL has not sought a formal advisory opinion from the Board. *Id.*

IRTL alleges that, prior to October 14, 2010, it wants to: (1) "make a single independent expenditure totaling more than $750, to support the election of Brenna Findley, candidate for Attorney General," specifically, IRTL wants to create a "mailer expressing support of Ms. Findley's pro-life beliefs" to be "sent to IRTL's general mailing list"; and (2) make a $100 contribution to Ms. Findley. Compl. ¶¶ 16, 19. IRTL also alleges that it plans to engage in unspecified, but "materially similar" activities in the future. Pl.'s Br. in Supp. of Mot. for Prelim. Inj. (hereinafter "Pl.'s Br.") at 2 (Clerk's No. 2–1); *see also* Compl. ¶ 20. IRTL argues that it is "chilled from doing [these things] due to the burdens imposed by the restrictions challenged here and the potential civil and criminal penalties for violating the challenged provisions." Pl.'s Br. at 1.

II. LAW AND ANALYSIS

IRTL requests that the Court issue a preliminary injunction enjoining the Defendants from enforcing several provisions of Iowa election law against IRTL. Mot. at 1–2 (Clerk's No. 2); Pl.'s Br. at 2, 31. This Court believes that the power to grant a preliminary injunction is an awesome power vested in the district court, recognizing that it is an extraordinary form of relief and must be carefully considered. *See Calvin Klein Cosmetics, Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 667 (8th Cir.1987).

The test for a preliminary injunction involves consideration of four factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties and litigants; and (4)

---

**5.** This new rule, 351–4.9(15), is the only rule challenged by IRTL. *See* Mot. at 1 (Clerk's No. 2) (asking the Court to enjoin Iowa Admin. Code r. 351–4.9(15)).

**6.** IRTL originally named Iowa Attorney General Tom Miller as a defendant. *Id.* ¶ 7. However, IRTL has since stipulated to Miller's dismissal and he is no longer a defendant in this case. *See* Clerk's Nos. 34, 36.

the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc). IRTL has the burden of showing that a preliminary injunction should be granted. *See Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994) (citing *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (en banc)). However, as to the merits, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 419, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006). The Court will consider each of the *Dataphase* factors in turn.

A. *Probability of Success on the Merits*

■ The first factor the Court must consider in deciding whether to issue a preliminary injunction is the likelihood that Plaintiff will succeed on the merits. Because IRTL seeks a preliminary injunction against the enforcement of a state statute, it must "demonstrate more than just a 'fair chance' that it will succeed on the merits." *See Planned Parenthood Minn. v. Rounds*, 530 F.3d 724, 731–32 (8th Cir.2008) (en banc). Instead, IRTL must meet a more rigorous standard, demonstrating that it is "likely to prevail on the merits." *Id.* at 732 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975)). This more "rigorous standard 'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.' " *Id.* (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)). "If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other *Dataphase* factors." *Id.* The Eighth Circuit has stated that "[b]y re-emphasiz-ing this more rigorous standard for demonstrating a likelihood of success on the merits in these cases, we hope to ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis." *Id.* at 733.

1. *Standing.*

■ "Article III of the Constitution limits federal jurisdiction to cases and controversies, and the 'core component of standing is an essential and unchanging part of the case-or-controversy requirement.' " *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir.2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Therefore, "[a] federal court bears the burden of examining standing at all stages of litigation, even if the parties do not raise the issue themselves." *Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir.1999).

> In order to prove standing, a plaintiff must demonstrate: (1) an actual injury that is concrete and particularized and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood, and not a mere speculative possibility, that the plaintiff's injury will be redressed by a favorable decision.

*Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 689 (8th Cir.2003) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). "[S]tanding cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal citation marks and quotation omitted), *overruled on other grounds by City of Littleton*

*v. Z.J. Gifts D–4, L.L.C.,* 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004).

> [I]n the First Amendment context, even though Plaintiffs are not required to await and undergo a criminal prosecution, they must face a credible threat of present or future prosecution under the statute for a claimed chilling effect to confer standing to challenge the constitutionality of a statute that both provides for criminal penalties and abridges First Amendment rights.

*Zanders v. Swanson,* 573 F.3d 591, 593 (8th Cir.2009).

■ Therefore, in order to demonstrate standing to challenge a particular provision of Iowa law, IRTL must "allege[ ] an actual and well-founded fear that the law will be enforced against" it. *See Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *see also Wis. Right to Life, Inc. v. Paradise,* 138 F.3d 1183, 1185 (7th Cir.1998) ("We may assume that WRTL has genuine apprehension about what lies ahead. But is its concern objectively 'well-founded'? If not, Article III of the Constitution precludes a federal court from ruling.").

IRTL has alleged four counts in its complaint. A number of IRTL's claims raise standing concerns. The Court will consider each count in turn.

a. *Count 1: Iowa's definitions of "political committee" and "permanent organization."*

■ In Count 1 of its complaint, IRTL challenges Iowa Code §§ 68A.102(18) and 68A.402(9), which define "political committee," and "permanent organization," respectively. Compl. ¶ 23. IRTL also asks the Court to enjoin enforcement of these sections in the instant motion. Mot. at 1.

IRTL's main contention is that if IRTL makes $750.00 in independent expenditures, it will be "defined by statute as a political committee." [7] Compl. ¶ 18 (citing Iowa Code § 68A.102(18)); *see also* Pl.'s Br. at 6. Under § 68A.102(18),

"Political committee" means any of the following:

a. A committee, but not a candidate's committee, that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue.

b. An association, lodge, society, cooperative, union, fraternity, sorority, educational institution, civic organization, labor organization, religious organization, or professional organization that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue.

c. A person, other than an individual, that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of

---

**7.** IRTL cannot be a permanent organization unless its activities fall under the definition in § 68A.102(18). *See* Iowa Code § 68A.402(9) (pertaining to an organization "temporarily engaging in activity described in section 68A.102, subsection 18"). Therefore, the Court will focus its analysis on § 68A.102(18).

seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate that an individual should or should not seek election to a public office prior to the individual becoming a candidate as defined in section 68A.102, subsection 4.

Iowa Code § 68A.102(18). Even if IRTL is correct that it falls under this definition, IRTL cannot be covered by § 68A.102(18) unless Iowa interprets it in an unconstitutional manner.

In *Citizens United,* the Supreme Court held that a federal ban on corporate independent expenditures was unconstitutional. 130 S.Ct. at 913. The federal statute at issue in *Citizens United* allowed corporations to set up a "separate segregated fund" to make independent expenditures. *Id.* at 887–88 (citing 2 U.S.C. § 441b(b)(2)). The Supreme Court held that this was unconstitutional because the PAC option did not allow corporations to speak for themselves. *Id.* at 897. Thus, under *Citizens United,* Iowa may not constitutionally require corporations to use segregated funds in order to make independent expenditures. *See id.* Under Iowa law, both political committees and permanent organization must keep their election-related funds segregated from their general treasury funds.[8] Iowa Code §§ 68A.203(2)(d); 68A.402(9). Therefore, in light of *Citizens United,* Iowa may not interpret § 68A.102(18) or § 68A.402(9) to include corporations that make only independent expenditures without running afoul of the Constitution.[9] Thus, IRTL would only be covered by these provisions if Iowa interpreted them in a manner prohibited by *Citizens United.*

There is no indication in the record, however, that Iowa "intends to interpret its own [statute] in contradiction to this established law." *See W. Tradition P'ship v. City of Longmont,* No. 09–cv–2303, 2009 WL 3418220, at *7 (D.Colo. Oct. 21, 2009). And "there is nothing on the face of the statute to prevent it from being construed and enforced in a constitutional manner." *Cf. Nat'l Right to Life Political Action Comm. v. Lamb,* 202 F.Supp.2d 995, 1012 (W.D.Mo.2002), *aff'd sub nom. Nat'l Right to Life Political Action Comm. v. Connor,* 323 F.3d 684 (8th Cir.2003) (finding that a challenged statute was amenable to a narrowing construction). To the contrary, all of the evidence currently before the Court indicates that Iowa already interprets these provisions to exclude corporations that make only independent expenditures. *See, e.g.,* Advisory Op. 2010–03 (Clerk's No. 20–1 at 13) ("[A]n independent expenditure committee will not be subject to the same registration and reporting requirements as a PAC."); *id.* at 12 (stating that "corporations may make independent expenditures so long as the disclosure provisions of Iowa Code section 68A.404 [which govern independent expenditure committees] are followed"); *see also* Iowa Admin. Code r. 351–4.1(1) (providing different rules for independent expenditure committees, permanent organizations and political committees).

---

**8.** The Court needs not, and therefore does not, decide whether Iowa's regulations for political committees and permanent organizations are otherwise analogous to the federal PAC regulations at issue in *Citizens United.*

**9.** IRTL does not allege that it wishes to engage in any activities, other than making independent expenditures, that might fall under the purview of § 68A.102(18) or § 68A.402(9). *See* Clerk's No. 1. Therefore, this case does not present, and the Court declines to issue any opinion on, how these definitions might be applied to organizations involved in other forms of express advocacy not affected by *Citizens United,* such as coordinated expenditures. *See generally* Advisory Op. 2010–01 (Clerk's No. 20–1 at 10) (distinguishing between independent and coordinated expenditures).

Indeed, Defendants insist that IRTL will not be considered a political committee if it makes its intended expenditure. *See* Hr'g Tr. 28:8–16 (arguing that this is "clear from ... a plain reading of the statute" that IRTL will be an independent expenditure committee, not a political committee); *see also id.* 26:5–6 ("If you want to make an independent expenditure, you don't have to be a PAC....."); Smithson Aff. ¶ 9 ("The Board has created Form Ind–Exp–O for organizations such as IRTL that make independent expenditures."); Defs.' Br. at 4 n. 1 (indicating that IRTL would be considered an independent expenditure committee) *id.* at 4 n. 2 (same). And, at the hearing, IRTL's counsel conceded that "[t]he State in its [advisory opinion] has said that [IRTL] will not be subject to the same types of restrictions that a political committee will be subject to...." Hr'g Tr. 9:1–3. The Court finds, therefore, that it is more likely than not that Iowa will apply §§ 68A.102(18) and 68A.404(9) in a manner that is consistent with *Citizens United.* Accordingly, IRTL has failed to show that there is a credible threat that Iowa will interpret these provisions as applying to IRTL's intended activities or threaten to enforce them against IRTL. *See Lamb,* 202 F.Supp.2d at 1010.

The Court also finds that IRTL's alleged fears that those provisions will be enforced against IRTL are not objectively well-founded in light of the statute, regulations, and the evidence in the record. IRTL offers two arguments in support of the proposition that its speech has been chilled, one based on the statutory text and one based on the Board's application

of that text. *See* Pl.'s Br. at 6. First, IRTL argues that, no matter how the relevant officials interpret the statute, IRTL is still a political committee under the plain text of the statute. Hr'g Tr. 9:1–7; *see also* Pl.'s Br. at 6; Compl. ¶ 18. As discussed above, there is some ambiguity in the statute on this point.[10] Thus, this is not a case where the challenged provisions clearly target the plaintiff's activities, creating a clear threat of enforcement. *Cf. Ark. Right to Life State Political Action Comm. v. Butler,* 146 F.3d 558, 560 (8th Cir.1998) (affirming a determination that the plaintiffs had standing where they were clearly "a target or object of the prohibitions" in the challenged provision). And, to the extent that IRTL is arguing that the relevant officials might change their interpretation of the statute, this Court declines to offer an advisory opinion.

Second, IRTL argues that the Board uses a "vague we-know-it-when-we-see-it approach" to determine whether an organization qualifies as a political committee. *See* Pl.'s Br. at 6. However, the only support IRTL cites for this assertion is Advisory Opinion 2010–03.[11] *Id.* That advisory opinion does not state—or even suggest—a "vague we-know-it-when-we-see-it approach." *See* Advisory Op. 2010–03. To the contrary, that opinion clearly indicates that organizations that spend more than $750.00 on express advocacy are subject to disclosure requirements, but those requirements vary depending on an organization's exact activities. *See id.; see also* Iowa Admin. Code r. 351–4.1(1). Because IRTL's reading of this opinion is patently unreasonable, the Court finds that IRTL's

---

**10.** The Court also notes that there is also some tension with IRTL's reliance on a plain-text argument when IRTL's counsel has repeatedly described Iowa's regulatory scheme as "confusing." Hr'g Tr. 10:15 ("The scheme is confusing."); *see also id.* 9:22–23 (arguing

that the Court "will remove confusion" if it grants IRTL's motion).

**11.** In its brief, IRTL cites to Advisory Opinion "2010–05," but clarified at the hearing that this was a "clerical error" and that it meant Advisory Opinion 2010–03. Hr'g Tr. 10:8–9.

citation to it does not demonstrate that there is a credible risk that the Board will use a "vague we-know-it-when-we-see-it approach" to determine whether IRTL qualifies as a political committee.

For all of these reasons, the Court concludes that IRTL has not demonstrated that it has standing to challenge Iowa Code § 68A.102(18) or § 68A.402(9). Therefore, on the current record, IRTL is not likely to succeed on the merits of its constitutional challenges to these provisions.

b. *Count 2: Iowa's requirements for independent expenditure committees.*

█ In Count 2 of its complaint, IRTL challenges Iowa Code §§ 68A.402B(3), 68A.404(3), 68A.404(4), Iowa Administrative Code Rule 351–4.9(15), Form Ind–Exp–O and Board Form DR–3.[12] Compl. ¶ 30. IRTL also asks the Court to preliminarily enjoin enforcement of these provisions. Mot. at 1. All of these provisions apply to persons required to file independent expenditure statements under § 68A.404, i.e., any "person, other than a committee registered under this chapter, that makes one or more independent expenditures." *See* Iowa Code § 68A.404(3). IRTL is not currently registered as a committee.[13] *See* Compl. ¶ 18. And it alleges that it intends to make one or more independent expenditures. *Id.* ¶ 16. Therefore, IRTL's intended activities fall under the plain text of § 68A.404(3). Defendants do not dispute that those provisions apply to IRTL. *See* Defs.' Br. at 4–5, 73; Smithson Aff. ¶ 9. The Court concludes that

IRTL has standing to challenge these provisions.

c. *Count 3: Iowa's ban on corporate campaign contributions.*

IRTL also asks this Court to enjoin enforcement of Iowa Code § 68A.503. Mot. at 1. As amended in April 2010, § 68A.503 provides that, subject to some exceptions, "an insurance company, savings and loan association, bank, credit union, or corporation shall not make a monetary or in-kind contribution to a candidate or committee except for a ballot issue committee." Iowa Code § 68A.503(1). Section 68A.503 clearly targets IRTL's intended conduct—making a campaign contribution. Compl. ¶ 19. Defendants do not dispute that this ban applies to IRTL. *See generally* Defs.' Br. at 13–15; Smithson Aff. ¶ 15. Therefore, IRTL has standing to challenge § 68A.503.

d. *Count 4: Iowa's requirement of board (or equivalent) approval.*

In Count 4 of its complaint, IRTL challenges Iowa Code §§ 68A.404(2)(a)-(b), 68A.404(5)(g), and Form Ind–Exp–O. Compl. ¶ 45. IRTL has asked the Court to enjoin these provisions. Mot. at 1–2.

Section 68A.404(2) provides:

a. An entity, other than an individual or individuals, shall not make an independent expenditure or disburse funds from its treasury to pay for, in whole or in part, an independent expenditure made by another person without the authorization of a majority of the entity's board of directors, executive council, or similar organizational leadership body of

---

**12.** There is some inconsistency in the record as to the precise title of this form. The form itself, as submitted by IRTL, is titled "DR3—Dissolution." *See* Clerk's No. 1–2 at 2. However, the Iowa Administrative Code Rules refer to the "statement of dissolution" as "Form DR–3." Iowa Admin. Code r. § 351—4.55(1);

*see also* Compl. ¶ 3(b) (referring to the challenged form as "Form DR–3"). The Court will refer to this form as "Form DR–3."

**13.** It does appear, however, that IRTL has already established a separate PAC. Smithson Aff. ¶ 14.

the use of treasury funds for an independent expenditure involving a candidate or ballot issue committee. Such authorization must occur in the same calendar year in which the independent expenditure is incurred.

b. Such authorization shall expressly provide whether the board of directors, executive council, or similar organizational leadership body authorizes one or more independent expenditures that expressly advocate the nomination or election of a candidate or passage of a ballot issue or authorizes one or more independent expenditures that expressly advocate the defeat of a candidate or ballot issue.

Section 68A.404(5)(g) states that an independent expenditure statement must include, *inter alia:*

A certification by an officer of the corporation that the board of directors, executive council, or similar organizational leadership body expressly authorized the independent expenditure or use of treasury funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred.

IRTL also objects to the "Statement of Certification" on Form Ind–Exp–O, which states, in relevant part:

I affirm that the independent expenditure reported above is accurate. I also affirm that this expenditure was made without the prior approval or in coordination with the benefiting committee. I understand that by filing this form, I am subject to the campaign laws in Iowa Code chapter 68A and administrative rules in chapter 351. I also understand that the failure to timely file this form leads to the imposition of civil penalties and the intentional failure to file the form may lead to additional civil and criminal sanctions. If this expenditure

was made by a corporation that the board of directors, executive council, or similar organizational leadership body expressly authorized the expenditure by resolution or other affirmative action this year.

*See* Form Ind–Exp–O (Clerk's No. 1–1).

IRTL argues that these provisions are unconstitutional both "facially and as applied to IRTL," in violation of the First and Fourteenth Amendments. Compl. ¶ 53. The Court will address whether IRTL has standing to make arguments under each of these Amendments in turn.

### i. *First Amendment.*

■ "[W]hen a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights,'a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing.'" *Minn. Citizens Concerned for Life v. Fed. Election Comm'n,* 113 F.3d 129, 131 (8th Cir.1997) (quoting *N.H. Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir.1996)). The Iowa campaign-finance statute does provide for criminal penalties. *See* Iowa Code § 68A.701 ("Any person who willfully violates any provisions of this chapter shall upon conviction, be guilty of a serious misdemeanor."). Therefore, IRTL "suffers Article III injury when it must either make significant changes to its operations to obey the regulation, or risk a criminal enforcement action by disobeying the regulation." *See Minn. Citizens Concerned for Life,* 113 F.3d at 131. But IRTL has not alleged either of these things.

■ First, IRTL has not alleged that it must make any changes to its current operating procedures, let alone any significant changes. *See* Compl. ¶¶ 44–53. IRTL alleges only that these requirements "burden[ ] IRTL's ability to select the

most effective means of advancing its cause." *Id.* ¶ 51. At most, this allegation suggests that, at some point, IRTL *might* like to select some different "means" that are somehow more "effective" than what is required by the statute. Such speculative, hypothetical allegations are not sufficient to bestow standing. Likewise, IRTL's suggestion that these provisions might burden the "inner workings and decision-making process of a citizen-group engaged in core political speech," fails to state any concrete, particularized injury to IRTL. *Id.* Indeed, if IRTL's board approved independent expenditures prior to the passage of S.F. 2354, then IRTL would not have to make *any* changes. If that is the case, then IRTL's claim would also lack the requisite element of redressibility. *See Advantage Media,* 456 F.3d at 801; *Wis. Right to Life, Inc.,* 138 F.3d at 1185.

Second, IRTL has not alleged that it plans to make any expenditures without complying with the challenged provisions. *See* Compl. ¶¶ 44–53. Therefore, IRTL has not alleged that it will "risk criminal enforcement action by disobeying the regulation." *See Minn. Citizens Concerned for Life,* 113 F.3d at 131; *see also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (stating that a claim is justiciable "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder . . . .").

IRTL has not pled sufficient facts to allow the Court to conclude that it has suffered a First Amendment "injury in fact" caused by the challenged provisions. Therefore, IRTL has failed to demonstrate that it has standing to challenge these provisions based on the First Amendment. *See Lamb,* 202 F.Supp.2d at 1003.

*ii. Fourteenth Amendment.*

■ IRTL also alleges that the challenged provisions violate the Fourteenth Amendment. Compl. ¶ 52. In its brief, IRTL only argues that these provisions violate the Fourteenth Amendment because they violate the First Amendment. *See* Pl.'s Br. at 29–30 ("As demonstrated above in the First Amendment argument section, Iowa is unable to prove that the prior-board-approval requirement is narrowly tailored to a compelling state interest (or substantially related to any state interest). For the same reasons, the requirement fails strict (or lesser) scrutiny under equal protection."). It is true that "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 101, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). But Article III's requirements "appl[y] with as much force in the equal protection context as in any other." *See United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). As discussed above, IRTL has not alleged a First Amendment injury. Therefore, IRTL has not demonstrated that it has standing to bring a Fourteenth Amendment claim based only on a violation of the First Amendment.

■ To the extent, however, that IRTL is stating a separate disparate treatment claim, the Court is satisfied that IRTL has standing. In its complaint, IRTL alleges that the challenged provisions "unconstitutionally burden[ ] the speech-related activities of corporations while not similarly regulating labor unions and other entities, such as LLCs and general partnerships, that are similarly situated." Compl. ¶ 52. This is sufficient to demonstrate standing. *See Russell v. Burris,* 146 F.3d 563, 572 (8th Cir.1998)

(rejecting an argument that certain PACs lacked standing because the challenged provisions burdened those PACs more than other PACs); *Gray v. City of Valley Park,* 567 F.3d 976, 984 (8th Cir.2009) ("It is customary that 'the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor' when making a determination on standing.") (quoting *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.,* 424 F.3d 840, 843 (8th Cir.2005)).

Having concluded that IRTL has demonstrated that it has standing to maintain some of its claims, the Court proceeds to consider the merits of those remaining claims.

### 2. *Iowa's requirements for independent expenditure committees.*

IRTL argues that Iowa Code §§ 68.402B(3), 68A.404(3), 68A.404(4), Iowa Administrative Code rule 351–4.9(15), Form Ind–Exp–O, and Form DR–3 are all unconstitutional, both facially and as applied to IRTL. Pl.'s Br. at 11—12. These provisions create a number of obligations for groups that are classified as independent expenditure committees.

IRTL does not seriously dispute that the government has valid interests in disclosure. *See* Hr'g Tr. 49:16–19 ("We are not asking you to take away disclosure, we think disclosure is good. We think disclaimers are important. We think that does serve the informational interest, and we think that is important to the public to know who is speaking."). Rather, IRTL focuses its attack on the "fit" of Iowa's regulations to those interests. In doing so, IRTL makes two categories of arguments—broad, generalized arguments that it apparently aims at all of the challenged provisions as well as specific arguments against particular provisions. The Court will address each of these groups of arguments in turn.

#### a. *Generalized arguments.*

■■■ IRTL makes two generalized arguments against all of the challenged provisions. However, the Court finds neither of these arguments to be persuasive.

#### i. *Least-restrictive means.*

IRTL's main argument is that Iowa's regulations are onerous because they are not the least-restrictive means for meeting the state's interests. Hr'g Tr. 49:5–6; *see also* Pl.'s Br. at 8–9 ("In analyzing the constitutionality of Iowa's scheme, it is important to compare it to the less-restrictive, independent-expenditure federal scheme. . . ."). The least restrictive means test applies only to a strict scrutiny analysis. *See N.C. Right to Life, Inc. v. Leake,* 525 F.3d 274, 331 (4th Cir.2008) (Michael, J., dissenting); *see also Nixon v. Shrink Mo. Gov't PAC,* 528 U.S. 377, 400, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Breyer, J., concurring) (noting that "least restrictive means" is a test associated with strict scrutiny review). IRTL argues that these requirements are subject to strict scrutiny because they are "PAC-style" requirements that "impose the *kind* of burdens imposed on PACs." *Id.* at 8. The Court does not agree. Unlike the federal ban that was at issue in *Citizens United,* the requirements contested here "impose no ceiling on campaign-related activities and do not prevent anyone from speaking." *See Citizens United,* 130 S.Ct. at 914 (quoting *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) and *McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 201, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003)) (internal quotation marks omitted); *see also* Iowa Code §§ 68.402B(3), 68A.404(3), 68A.404(4); Iowa Administrative Code rule 351–4.9(15); Form Ind–Exp–O; Form DR–3. Therefore, although they "may burden the ability to speak," they are not subject to strict scrutiny. *Citizens United,* 130 S.Ct. at 914. Instead, they are subject to exacting scruti-

ny. *See id.; see also Doe v. Reed,* ——— U.S. ———, 130 S.Ct. 2811, 2818, 177 L.Ed.2d 493 (2010) (applying exacting scrutiny where the challenged provision was "not a prohibition on speech, but instead a *disclosure* requirement"); *SpeechNow.org v. Fed. Election Comm'n,* 599 F.3d 686, 691, 696 (D.C.Cir.2010) (en banc) (applying exacting scrutiny to federal "organizational, administrative, and continuous reporting requirements" for political committees).

Under exacting scrutiny, Iowa is not required to employ the "least-restrictive means to meet a compelling government interest." *See Citizens United,* 130 S.Ct. at 914 (requiring only a "substantial relation" to a "sufficiently important" interest). Therefore, even if less-burdensome alternatives do exist, that fact does not, contrary to IRTL's contentions, render these provisions unconstitutional.

### ii. Major purpose "test"

IRTL argues that the challenged provisions "violate *Buckley*'s mandate that burdensome PAC-style regulations may be imposed only on' organizations that are under the control of a candidate or the *major purpose* of which is the nomination or election of a candidate." Pl.'s Br. at 11 (citing *Buckley,* 424 U.S. at 79, 96 S.Ct. 612). But the Court reads no such "mandate" in *Buckley.*

In the portion of *Buckley* relied upon by IRTL, the Supreme Court considered federal disclosure requirements and specifically approved of such disclosures, as long as they were limited to "spending that is unambiguously related to the campaign of a particular federal candidate." *Buckley,* 424 U.S. at 80, 96 S.Ct. 612. The Supreme Court reasoned that expenditures made by organizations that were "under the control

of a candidate or the major purpose of which is the nomination or election of a candidate" were, "by definition, campaign related." *Id.* at 79, 96 S.Ct. 612. Therefore, Congress could require such organizations to disclose all of their expenditures, i.e., they could be regulated as "political committees." *See id.* For other organizations, however, Congress could only require disclosure of "spending that is unambiguously related to the campaign of a particular ... candidate." *Id.* at 80, 96 S.Ct. 612. When limited in this way, the Supreme Court concluded that the disclosure requirements had "a sufficient relationship to a substantial governmental interest." *Id.*

■■■ Therefore, the Court concludes that "*Buckley*'s statement—that defining groups with 'the major purpose' of political advocacy as political committees is sufficient 'to fulfill the purposes of the Act[ ]'— does not indicate that an entity must have that major purpose to be deemed constitutionally a political committee." *Human Life of Wash. Inc. v. Brumsickle,* 624 F.3d 990, 1009–10 (9th Cir.2010) (internal citation omitted). Indeed, "*Buckley* ... only defined the outer limits of permissible political committee regulation" and "left room for legislative judgment within these limits, so long as the resulting regulation does not prohibit a substantial amount of non-electoral speech." *See Leake,* 525 F.3d at 327 (Michael, J., dissenting).

Because *Buckley* simply does not categorically "prohibit[ ] the government from designating a group as a 'political committee' unless the group's sole, primary purpose is political advocacy," it also does not categorically prohibit Iowa from subjecting entities to disclosure requirements simply because those requirements may be characterized as "PAC-style regulations."[14]

---

**14.** The Court needs not, and therefore does not, decide whether IRTL's "PAC-style" label

is appropriate—i.e., whether the challenged provisions are, in fact, comparable to the fed-

*See Brumsickle,* 624 F.3d at 1008–09; Pl.'s Br. at 11. Therefore, the Court concludes that the challenged provisions are not rendered unconstitutional by the "major purpose" language in *Buckley.*

b. *Specific Arguments.*

In addition to its generalized arguments, IRTL makes particularized arguments against the provisions challenged in Count 2. *See* Pl.'s Br. at 7–12. At the hearing, IRTL's counsel summarized its main complaints as follows:

> Iowa has chosen not to use that federal model that it clearly knows about and goes above and beyond and requires more. It requires you to register before you speak. That's onerous. It requires you to continue reporting even when you don't speak. It requires you to terminate and essentially say you are not going to speak anymore. And then you would have to file another registration if you change your mind. These are onerous burdens.

Hr'g Tr. 49:5–11.

As discussed above, these provisions are subject to exacting scrutiny. *See Citizens United,* 130 S.Ct. at 914. This standard "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Id.* The Court will address IRTL's specific contentions in turn.

i. *Initial filing requirements.*

■ IRTL first objects to the initial filing requirements contained in Iowa Code §§ 68A.404(4)(a), 68A.404(3)(a), and Form Ind–Exp–O. *See* Pl.'s Br. at 7, 9 & n. 3.

As an initial matter, IRTL's counsel repeatedly insisted at the hearing that Iowa requires corporations to register before they speak. Hr'g Tr. 12:12–13, 49:5–7; *see*

*also id.* at 19:24–25. However, the statute contains no such requirement. Section 68A.404(3)(a) provides that "[a]n initial report shall be filed at the same time as the independent expenditure statement." Section 68A.404(4)(a) further provides:

> An independent expenditure statement shall be filed within forty-eight hours of the making of an independent expenditure in excess of seven hundred fifty dollars in the aggregate, or within forty-eight hours of disseminating the communication to its intended audience, whichever is earlier. For purposes of this section, an independent expenditure is made when the independent expenditure communication is purchased or ordered regardless of whether or not the person making the independent expenditure has been billed for the cost of the independent expenditure.

Although the statute requires both an "independent expenditure statement" and an "initial report," the Board allows independent expenditure committees to file a single form, Form Ind–Exp–O, to satisfy both requirements. *See* Smithson Aff. ¶ 8 (citing Iowa Admin. Code r. 351–4.27(2)); Pl.'s Br. at 7 n. 3.

For the purposes of § 68A.404, "an independent expenditure is made at the time that the cost is incurred." Iowa Code § 68A.404(4)(c). Therefore, it is possible that a corporation would have to make its initial filing before it actually disseminates its speech to the public. *See* Iowa Code § 68A.404(4)(a). However, the fact that this possibility exists is very different from a blanket requirement that corporations "register before they speak." *See* Hr'g Tr. 49:7.

In its brief, IRTL argues that §§ 68A.404(3)(a) and 68A.404(4)(a) are unconstitutionally burdensome because an in-

eral political committee regulations that were at issue in *Buckley.*

dependent expenditure committee must make its initial filing within 48 hours of making an independent expenditure. *See* Pl.'s Br. at 9. According to IRTL, the state has "no justification" for requiring independent expenditure committees to file so quickly. *See id.* at 10–11. Defendants argue that the state has an important interest in letting the public know "who is speaking about a candidate shortly before an election." *See* Defs.' Br. at 8 (quoting *Citizens United,* 130 S.Ct. at 915–16); *see also id.* at 10 (arguing that the 48–hour filing requirement is substantially related to this interest). The Court agrees that this is a sufficiently important government interest. *See Citizens United,* 130 S.Ct. at 915–16. The Court also finds that the 48–hour reporting requirement is substantially related to this important government interest. Requiring prompt disclosures, especially close to an election, helps to assure that they are made "in time to provide relevant information to voters." *See McConnell,* 540 U.S. at 200, 124 S.Ct. 619; *see also Citizens United,* 130 S.Ct. at 916 (praising the benefits of "prompt disclosures"). And, contrary to IRTL's assertions, the Court does not find the 48–hour reporting requirement to be an "onerous" burden. *See* Hr'g Tr. 49:5–11. Therefore, Iowa's initial filing requirements pass exacting scrutiny.

Because these provisions pass exacting scrutiny, the Court concludes that IRTL is unlikely to succeed on the merits of its claims against the initial filing requirements contained in Iowa Code §§ 68A.404(4)(a), 68A.404(3)(a) and Form Ind–Exp–O.

*ii. Subsequent reporting requirements.*

IRTL argues that Iowa's subsequent reporting requirements for independent expenditure committees, as contained in Iowa Code §§ 68A.404(3)(a), 68A.404(3)(a)(1), and Iowa Administrative Code rule 351–4.9(15), are unconstitution-

ally burdensome. *See* Pl.'s Br. at 7–8, 8 n. 6. First, IRTL objects to the fact that § 68A.404(3)(a) and rule 351–4.9(15) require periodic disclosures instead of "event-driven" disclosures. *See* Pl.'s Br. at 9. Both the statute and the rule require independent expenditure committees to file reports "according to the same schedule as the office or election to which the independent expenditure was directed." Iowa Code § 68A.404(3)(a); Iowa Admin. Code r. 351–4.9(15). Defendants argue that this periodic reporting requirement serves the state's informational interest, allowing Iowa to help its citizens "make informed choices in the political marketplace." Defs.' Br. at 11–12 (quoting *Citizens United,* 130 S.Ct. at 914). The Court agrees, and finds that the periodic reporting requirement is substantially related to this important informational interest. *See Citizens United,* 130 S.Ct. at 915–16; *see also SpeechNow.org,* 599 F.3d at 696 (noting that "[t]he Supreme Court has consistently upheld organizational and reporting requirements against facial challenges," based on this informational interest); *Minn. Citizens Concerned for Life v. Swanson,* No. 10–2938, 741 F.Supp.2d 1115, 1130–31, 2010 WL 3768041, at *11 (D.Minn. Sept. 20, 2010) (slip copy) (upholding periodic reporting requirements). Iowa "is entitled to conclude that its electorate needs to know, on an ongoing basis, the source of financial support for those who are taking positions" in support of a candidate for state office. *Cf. Nat'l Org. For Marriage v. McKee,* 666 F.Supp.2d 193, 208 (D.Me.2009) (upholding reporting requirements in the context of ballot-initiative advocacy). Therefore, the periodic reporting requirements pass exacting scrutiny.

Second, IRTL objects to the fact that Iowa "requir[es] supplemental reports from groups simply *raising* over $1,000 in contributions earmarked for making inde-

pendent expenditures." Pl.'s Br. at 9 (citing Iowa Code § 404(3)(a)(1)); *see also* Hr'g Tr. 49:8 ("It requires you to continue reporting even when you don't speak."). Section 404(3)(a)(1) states, in relevant part, that an independent expenditure committee must file supplemental reports "if the person making the independent expenditure either raises or expends more than one thousand dollars." Iowa Code § 404(3)(a)(1). IRTL refers to money raised under this provision as "earmarked contributions." *See* Pl's Br. at 11. As discussed above, Defendants have asserted an important government interest in providing the electorate with information about campaign-related spending. *See* Defs.' Br. at 11–12. Earmarked contributions, like independent expenditures, constitute "spending that is unambiguously related to the campaign of a particular ... candidate." *Buckley,* 424 U.S. at 80, 96 S.Ct. 612. The Court concludes that Iowa's requirements that these contributions be reported is substantially related to the government's important informational interest because it can help "shed the light of publicity on spending that is unambiguously campaign related." *See id.* at 81, 96 S.Ct. 612. Therefore, the supplemental reporting requirement also passes exacting scrutiny.

Because both of these requirements pass exacting scrutiny, the Court concludes that IRTL is unlikely to succeed on the merits of its claims against the periodic and supplemental requirements contained in Iowa Code §§ 68A.404(3)(a), 68A.404(3)(a)(1) and Iowa Administrative Code rule 351–4.9(15).

*iii. Termination notice.*

■ IRTL argues that Iowa requires independent expenditure committees to formally dissolve in a manner that "effectively requires the entity to cease to exist." Pl.'s Br. at 10; *see also* Hr'g Tr. 11:19–20. IRTL also argues that an independent ex-

penditure committee may not terminate its status as such without the Board's approval. Pl.'s Br. at 10–11; Hr'g Tr. 11:21–23. According to IRTL, these requirements are unconstitutionally burdensome and are imposed on independent expenditure committees by Iowa Code § 68A.402B(3), Iowa Administrative Code rule 351–4.9(15), and Form DR–3. *See* Pl.'s Br. at 8, 10–11 & n. 6; *see also* Mot. at 1 (challenging these provisions). However, none of these three challenged provisions actually impose such requirements on independent expenditure committees.

First, there is simply no requirement in § 68.402B(3) that "effectively requires [a covered] entity to cease to exist." Pl.'s Br. at 10; *see also* Mot. at 1 (challenging only subsection (3) of § 68A.402B). Section 68A.402B provides, in its entirety, that:

1. If a committee, after having filed a statement of organization or one or more disclosure reports, dissolves or determines that it will no longer receive contributions or make disbursements, the committee shall notify the board within thirty days following such dissolution or determination by filing a dissolution report on forms prescribed by the board.

2. A committee shall not dissolve until all loans, debts, and obligations are paid, forgiven, or transferred and the remaining moneys in the committee's account are distributed according to sections 68A.302 and 68A.303. If a loan is transferred or forgiven, the amount of the transferred or forgiven loan must be reported as an in-kind contribution and deducted from the loans payable balance on the disclosure form. If, upon review of a committee's statement of dissolution and final report, the board determines that the requirements for dissolution have been satisfied, the dissolution shall

be certified and the committee relieved of further filing requirements.

3. If a person who files an independent expenditure statement and a disclosure report, pursuant to section 68A.404, determines that the person will no longer make an independent expenditure, the person shall notify the board within thirty days following such determination by filing a termination report on forms prescribed by the board.

Thus, the statute clearly distinguishes between requirements for committees (including political committees) and independent expenditure committees. Section 68A.402B requires both committees and independent expenditure committees to notify the Board if they determine that they will no longer participate in covered election-related activities. *See* Iowa Code §§ 68A.402B(1), (3). However, the required reports are not the same. Committees (which, as noted above, include political committees) must file a "dissolution report," while "a person who files an independent expenditure statement and a disclosure report, pursuant to section 68A.404" (i.e., an independent expenditure committee) must file a "termination report." *Compare* Iowa Code § 68A.402B(1) *with* Iowa Code § 68A.402B(3). Additionally, the statute indicates that committees

must formally dissolve and seek Board approval before their reporting requirements are extinguished. Iowa Code § 68A.402B(2). But there is no such requirement for independent expenditure committees. *See* Iowa Code § 68A.402B. Therefore, § 68A.402B simply does not require independent expenditure committees to formally dissolve or obtain Board approval before their reporting requirements are extinguished.[15]

Second, IRTL points to the use of the term "notice of dissolution" in Iowa Administrative Code rule 351–4.9(15). *See* Pl.'s Br. at 8 n. 6 (citing that rule in support of its dissolution requirements). The rule states, in relevant part, that an independent expenditure committee must "file reports according to the same schedule as the office or election to which the independent expenditure was directed until the committee files a notice of dissolution *pursuant to Iowa Code section 68A.402B(3)* ...." Iowa Admin. Code r. 351–4.9(15) (emphasis added). Although this rule uses the term "dissolution," the same term used in §§ 68A.402B(1)-(2), it clearly incorporates only the requirements of § 68A.402B. *Id.* Because § 68A.402B does not contain any financial dissolution or Board-approval requirements, neither does rule 351–4.9(15).

---

**15.** It appears that IRTL may be basing its argument on its contention that independent expenditure committees may simultaneously be regulated as committees, including political committees. *See* Compl. at 15 n. 13; *see also* Clerk's No. 19. IRTL argues that "if IRTL makes independent expenditures aggregating over $750 in a calendar year, it becomes not only an independent expenditure committee but also a committee and a political committee...." Pl.'s Br. at 6; *see also* Compl. ¶ 18; Hr'g Tr. 8:23–25. In other words, as IRTL reads the statute, IRTL can simultaneously qualify—and therefore be simultaneously regulated—as a "political committee" (which also makes it a "committee") and as an "independent expenditure committee." *See* Pl.'s Br. at 6. However, IRTL's

simultaneous-coverage argument is contradicted by the plain text of the statute. *See, e.g.,* Iowa Code §§ 68A.402B, 68A.404(3)-(3)(b) (expressly distinguishing between independent expenditure committees and committees, including political committees). Additionally, the Board has plainly stated that "[a]n 'independent expenditure committee' will not be subject to the same registration and reporting requirements as a PAC." Advisory Op. 2010–03 (Clerk's No. 20–1 at 13). Accordingly, there is no credible threat that IRTL will be subjected to the simultaneous coverage it claims to fear. Therefore, the Court rejects IRTL's simultaneous-coverage contention and all of its arguments based, explicitly or implicitly, upon this flawed premise.

Third, IRTL argues that Form DR–3 requires independent expenditure committees to essentially "cease to exist." *See* Compl. at 15, n. 13; *see also* Clerk's No. 19. However, DR–3 imposes no such requirements on independent expenditure committees. Form DR–3 states that:

A committee may end its filing obligation by filing a Notice of Dissolution when it has

1. Paid or transferred all of its debts or obligations.

2. Reduced its cash balance to zero.

3. If a candidate's committee, sold or transferred its campaign property.

4. Filed a final report showing these transactions.

Form DR–3 (Clerk's No. 1–2). However, Form DR–3 imposes no such requirements on independent expenditure committees.[16] *See id.* Moreover, IRTL has not pointed to any evidence that the Board, in practice, requires independent expenditure committees to "cease to exist" before they file a termination report. *See* Pl.'s Br. at 10.

Because IRTL purports to challenge requirements that simply do not exist in Iowa Code § 68A.402B(3), Iowa Administrative Code rule 351–4.9(15), and Form DR–3, the Court concludes that IRTL is unlikely to succeed on the merits of its termination-related claims against these provisions.

3. *Iowa's ban on corporate contributions.*

IRTL alleges that Iowa Code § 68.503, which bans corporate campaign contributions, is unconstitutional, both facially and as applied to IRTL. Compl. ¶ 19. IRTL argues that this provision violates both the First and Fourteenth Amendments. Pl.'s Br. at 13, 22. The Court will consider each of these contentions in turn.

a. *First Amendment.*

i. *Level of scrutiny.*

As an initial matter, IRTL argues that § 68A.503 is subject to strict scrutiny. Pl.'s Br. at 13. IRTL concedes that "[s]ince *Buckley,* courts have subjected contribution limits to less demanding review." *Id.* at 14. However, IRTL argues strict scrutiny should apply in this case because: (1) Iowa bans contributions, instead of limiting them; (2) the ban "impermissibly singles out certain speakers, e.g. corporations and banks"; and (3) the ban is "a content-based regulation." *Id.* at 14 n. 2, 15, 18–19. The Court does not agree.

IRTL's first two arguments have already been rejected by the Supreme Court. *See Fed. Election Comm'n v. Beaumont,* 539 U.S. 146, 162, 123 S.Ct. 2200, 156 L.Ed.2d 179 (2003) ("It is not that the difference between a ban and a limit is to be ignored; it is just that the time to consider it is when applying scrutiny at the level selected, not in selecting the standard of review itself."); *id.* at 161, 123 S.Ct. 2200 (rejecting the argument "that application of the ban on its contributions should be subject to a strict level of scrutiny, on the ground that § 441b does not merely limit contributions, but bans them on the basis of their source"). Therefore, this Court must reject these arguments as well.[17] *See id.* at 161–62, 123 S.Ct. 2200; *see also Green Party of Conn. v. Garfield,*

---

16. There may be some confusion due to the fact that the Board uses Form DR–3 for both dissolution reports and termination reports. *See* Iowa Admin. Code r. 351–4.55.

17. Additionally, contrary to IRTL's suggestion, there is no indication that § 68A.503 is "simply a means to control content." *See* Pl.'s Br. at 19 (quoting *Citizens United,* 130 S.Ct. at 899). IRTL has "made no showing that corporations share a monolithic ideology or specific viewpoint that it being targeted." *See Swanson,* 741 F.Supp.2d at 1134 n. 16, 2010 WL 3768041, at *15 n. 16; *see also Citizens United,* 130 S.Ct. at 912 ("Corpora-

616 F.3d 189, 199 (2d Cir.2010) ("[W]e reject plaintiffs' argument that we must apply strict scrutiny because the provisions at issue here are *bans*, as opposed to mere *limits*.").

IRTL also argues that strict scrutiny applies because § 68A.503 is a content-based restriction on speech. Pl.'s Br. at 18. "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Bartnicki v. Vopper*, 532 U.S. 514, 526, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (quoting *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 642–43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). "In determining whether a regulation is content based or content neutral, we look to the purpose behind the regulation; typically, government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)) (internal quotation marks omitted); *see also Fraternal Order of Police, N.D. State Lodge v. Stenehjem*, 431 F.3d 591, 596 (8th Cir.2005) ("The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of disagreement with the message the speech conveys."). This is true "even if [the regulation] has an incidental effect on some speakers or messages but not others." *See Ward*, 491 U.S. at 791, 109 S.Ct. 2746.

In this case, there is no indication in the record that Iowa enacted § 68A.503 because it disagrees with the message conveyed by contributions.[18] To the contrary, it appears that the Iowa Legislature was not targeting the expressive content of corporate contributions, but rather was concerned about "the effect of the act of communicating" in that manner. *Cf. Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 659–60 (8th Cir.2003) (distinguishing a law banning unsolicited facsimile ads from content-based restrictions because "[t]he harm associated with unsolicited fax advertisements is . . . not related to the content of the messages"). Indeed, bans on direct contributions have long been used to "prevent corruption or the appearance of corruption." *Beaumont*, 539 U.S. at 154, 123 S.Ct. 2200; *see also SpeechNow.org*, 599 F.3d at 695 ("Limits on direct contributions to candidates, 'unlike limits on independent expenditures, have been an accepted means to prevent *quid pro quo* corruption.'") (quoting *Citizens United*, 130 S.Ct. at 909). Because § 68A.503 serves a purpose unrelated to the content of the expression—namely, preventing corruption or the appearance—it is a content-neutral regulation.[19] *See Fraternal Order of Police*, 431 F.3d at 596.

---

tions, like individuals, do not have monolithic views.").

**18.** IRTL's arguments as to "content" misapprehend the expressive nature of contributions. Political contributions implicate First Amendment concerns because "[a] contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support." *Buckley*, 424 U.S. at 21, 96 S.Ct. 612. IRTL argues that § 68A.503 is content-based because it applies to political contributions and not to charitable, educational, or religious contributions. Pl.'s Br. at 18. But, whether the recipient of a contribution is a candidate, a charity, a school, or a church, the message expressed—"I support you"—is exactly the same. Therefore, the expression regulated under § 68A.503 simply is not determined by the message conveyed. *See Bartnicki*, 532 U.S. at 526, 121 S.Ct. 1753.

**19.** IRTL's reliance on *Iowa Right to Life Committee* and Day is misplaced. *See* Pl.'s Br. at 18 n. 14 (citing *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 967–68 (8th Cir. 1999); *Day v. Holahan*, 34 F.3d 1356, 1361 (8th Cir.1994)). In both cases, the Eighth Circuit determined that the challenged provi-

The Supreme Court has "consistently held that restrictions on contributions require less compelling justification than restrictions on independent spending." *Fed. Election Comm'n v. Mass. Citizens for Life,* 479 U.S. 238, 259–60, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). A lower standard of scrutiny is appropriate because "[b]y contrast with a limitation upon expenditures for political expression, a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication." *Buckley,* 424 U.S. at 20, 96 S.Ct. 612. Likewise, even if contribution limits "involv[e] significant interference with associational rights," those limits are still subject to a lesser standard of scrutiny known as "closely drawn scrutiny." *Beaumont,* 539 U.S. at 161, 123 S.Ct. 2200. Nothing in *Citizens United* purported to change this standard—indeed, the Court specifically noted that it was not reconsidering "whether contribution limits should be subjected to rigorous First Amendment scrutiny." 130 S.Ct. at 909. Therefore, the Court will review § 68A.503 under the standard of closely drawn scrutiny.

*ii. Application of closely-drawn scrutiny.*

■ Under closely-drawn scrutiny, the Iowa contribution ban must be "closely drawn to match a sufficiently important interest." *Beaumont,* 539 U.S. at 161, 123 S.Ct. 2200 (internal quotation marks omitted). This is a "relatively complaisant review." *Id.* A contribution limit fails this standard if it prevents candidates "from amassing the resources necessary for effective campaign advocacy." *Randall v. Sorrell,* 548 U.S. 230, 248, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006) (quoting *Buckley,*

424 U.S. at 21, 96 S.Ct. 612). "Where there is strong indication in a particular case, i.e., danger signs, that such risks exist, courts must review the record independently and carefully to assess the statute's tailoring." *Thalheimer v. City of San Diego,* 706 F.Supp.2d 1065, 1073 (S.D.Cal. 2010) (quoting *Randall,* 548 U.S. at 249, 126 S.Ct. 2479) (internal quotation marks omitted).

■ In this case, Defendants argue that the government has compelling interests in preventing corruption or the appearance of corruption. *See* Smithson Aff. ¶ 15 ("The state has a compelling interest in protecting the public trust in the conduct and fairness of the election of state officers, and the ban on corporate contributions serves that interest by protecting against corruption or the appearance of corruption. . . ."). The Court agrees. *See First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 788 n. 26, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("The importance of the governmental interest in preventing [corruption] has never been doubted."); *see also Beaumont,* 539 U.S. at 154, 123 S.Ct. 2200 (noting that the federal ban on corporate contributions "was and is intended to prevent corruption or the appearance of corruption") (quoting *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 496–497, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985) (internal quotation marks omitted)).

"Whether the limit is unconstitutionally low because it prevents candidates from amassing the resources necessary for effective campaign advocacy is a fact intensive inquiry." *Thalheimer,* 706 F.Supp.2d at 1073. However, IRTL has provided this Court with few facts in support of its challenge. IRTL argues that § 68A.503 is not closely drawn because it applies to

---

sion distinguished disfavored speech on the basis of its content. *See Iowa Right to Life,*

187 F.3d at 967; *Day,* 34 F.3d at 1360–61.

small contributions as well as large ones. *See* Pl.'s Br. at 20–21. However, IRTL has failed to provide any evidence § 68A.503 has had any adverse effect on the ability of Iowa candidates to run effective campaigns. *See Randall,* 548 U.S. at 248, 126 S.Ct. 2479. Indeed, IRTL has failed to even point to any "danger signs" that such risk exists. *See Thalheimer,* 706 F.Supp.2d at 1074. And, contrary to IRTL's contentions, the fact that § 68A.503 "is not merely a limit on contributions, but an outright ban" does not, standing alone, make § 68A.503 unconstitutional. *See* Pl.'s Br. at 21. The Supreme Court specifically upheld a federal ban on corporate contributions in *Beaumont.*[20] 539 U.S. at 149, 123 S.Ct. 2200. And, in *Citizens United,* the Supreme

Court noted, without any hint of disapproval, that some states have banned direct corporate contributions "[a]t least since the latter part of the 19th century." 130 S.Ct. at 900.

Additionally, § 68A.503 is not, as IRTL argues, "an outright ban on corporate political speech" or "a prohibition on political association." Pl.'s Br. at 21, 15. Section 68A.503 "does not prevent [IRTL] from expressing support in other ways such as making independent expenditures, volunteering services to a campaign, or endorsing a candidate." *See Minn. Citizens Concerned for Life, Inc. v. Kelley,* 427 F.3d 1106, 1115 (8th Cir.2005); *see also* Iowa Code § 68A.404 (setting no cap on independent expenditures). Nor does it prevent IRTL from associating with its fa-

---

**20.** IRTL argues that *"Beaumont* was wrongly decided and should be reconsidered in light of *Citizens."* Pl.'s Br. at 13. As an initial matter, *Beaumont* is still good law that is binding on this Court. *See Green Party of Conn.,* 616 F.3d at 199 (*"Beaumont* and other cases applying the closely drawn standard to contribution limits remain good law."); *Swanson,* 741 F.Supp.2d at 1133, 2010 WL 3768041, at *14 ("The Court concludes that *Citizens United* neither explicitly nor implicitly overruled *Beaumont."*). But even if *Citizens United* had called *Beaumont* into doubt, the Court would still reject IRTL's arguments for at least two reasons.

First, contrary to IRTL's suggestion, the result in *Beaumont* did not depend on the availability of a PAC option. *See* Pl.'s Br. at 12–13. Rather, the Supreme Court stated that its decision was based on the differences between independent expenditures and contributions. *See Beaumont,* 539 U.S. at 159, 123 S.Ct. 2200 ("[A]lthough we have never squarely held against NCRL's position here, we could not hold for it without recasting our understanding of the risks of harm posed by corporate political contributions, of the expressive significance of contributions, and of the consequent deference owed to legislative judgments on what to do about them.").

Second, IRTL is simply wrong when it argues that *Beaumont's* reasoning has been

"discredited" by *Citizens United. See* Pl.'s Br. at 13. IRTL argues that *"Beaumont* found three state interests supporting the ban: an antidistortion interest, a shareholder-protection interest, and an anticircumvention interest. *Citizens* rejected all three." *Id.* at 12. This is a mischaracterization of *Beaumont.* In *Beaumont,* the Supreme Court stated that the ban's major purpose was to prevent corruption or the appearance of corruption. *Beaumont,* 539 U.S. at 154, 123 S.Ct. 2200 ("[T]he ban was and is intended to prevent corruption or the appearance of corruption.") (internal quotation marks omitted). The Supreme Court did discuss the three interests listed by IRTL as *additional* interests served by the ban, but it never suggested that the government's interest in preventing corruption was not itself sufficient to support the ban. *See id.* at 154–59, 123 S.Ct. 2200. And, importantly, *Citizens United* dealt with independent expenditures, not contributions. *See Citizens United,* 130 S.Ct. at 909. In arguing that *Beaumont's* reasoning is "discredited," IRTL is really arguing that a rationale utilized "to declare prohibitions on independent expenditures unconstitutional as applied to [corporations] is equally applicable in the context of direct contributions"—a proposition the Supreme Court has already rejected. *See Beaumont,* 539 U.S. at 151, 123 S.Ct. 2200 (quoting *Beaumont v. Fed. Election Comm'n,* 278 F.3d 261, 275 (4th Cir.2002)).

vored candidate in other ways. Indeed, "[a] ban on direct corporate contributions leaves individual members of corporations free to make their own contributions, and deprives the public of little or no material information." *Beaumont,* 539 U.S. at 162 n. 8, 123 S.Ct. 2200.

For all of these reasons, IRTL has failed to show that it is likely to succeed on the merits of its First Amendment claims against § 68A.503.

b. *Fourteenth Amendment.*

▆▆▆ IRTL also argues that § 68A.503 violates its rights under the Fourteenth Amendment because: (1) it is a content-based restriction; and (2) it treats corporations differently than other associations, such as labor unions. Pl.'s Br. at 22–23. IRTL's first argument fails at the outset because, as discussed above, § 68A.503 is not a content-based restriction. IRTL's second argument fails because IRTL has not made the requisite threshold showing.

In order to prevail on its equal protection claim, IRTL must show that it is "similarly situated to those who allegedly receive favorable treatment." *Arnold v. City of Columbia,* 197 F.3d 1217, 1220 (8th Cir.1999). IRTL avers that "corporations and other organized associations are similarly situated." Pl.'s Br. at 23; *see also* Compl. ¶ 42 (suggesting that "labor unions, LLCs, and general partnerships" are similarly situated to corporations). However, IRTL does not identify any relevant similarities or provide any evidence at all to support this generalized assertion.[21] *See*

Pl.'s Br. at 23. IRTL's bare, conclusory statement is not sufficient to carry its burden.[22] *Cf. Nolan v. Thompson,* 521 F.3d 983, 990 (8th Cir.2008) (affirming dismissal of an equal-protection claim where the record lacked sufficient evidence "to enable a meaningful comparison between [the plaintiff] and those he claims are similarly situated"). Furthermore, other courts have recognized that "differences in organizational structure allow [the legislature] to shape the election laws to reflect those differences." *See Int'l Ass'n of Machinists & Aerospace Workers v. Fed. Election Comm'n,* 678 F.2d 1092, 1108 (D.C.Cir. 1982); *see also Bread Political Action Comm. v. Fed. Election Comm'n,* 635 F.2d 621, 630 (7th Cir.1980) (en banc) ("[T]he somewhat dissimilar treatment of corporations, labor organizations, membership organizations and trade associations under [federal election law] follows from the rather obvious facts that each of the different groups has a different structure and a different kind of constituency and that each requires somewhat different regulations to curb abuses the Act was intended to halt."), *rev'd on other grounds,* 455 U.S. 577, 102 S.Ct. 1235, 71 L.Ed.2d 432 (1982). The Supreme Court has also recognized that there may be "crucial differences" between corporations and unions which can justify differing regulations. *See Austin,* 494 U.S. at 666, 110 S.Ct. 1391, *overruled in part on other grounds by Citizens United,* 130 S.Ct. at 876; *see also Swanson,* 741 F.Supp.2d at 1133–34, 2010 WL 3768041, at *14 ("While *Citizens United*

---

**21.** Instead, IRTL merely cites to a single opinion by the Colorado Supreme Court. Pl.'s Br. at 23 (citing *Dallman v. Ritter,* 225 P.3d 610, 634–35 (Colo.2010)). However, *Dallman* is neither binding authority nor persuasive in its reasoning. *See Dallman,* 225 P.3d at 634–35 (stating, in a conclusory fashion, that unions and corporations are "similarly situated" in the context of "preventing corruption in contracting").

**22.** The Court notes that while IRTL makes much of the fact that its complaint is verified (Hr'g Tr. 17:3–6), neither IRTL's complaint nor its verification page (Compl. at 25) establish that its Executive Director, who verified the Complaint, is competent to testify as to any factual similarities between corporations and unions or other "organized associations." *See generally* Fed.R.Evid. 602.

overturned *Austin* insofar as *Austin* held that speech could be banned based on the speaker's corporate identity, the Supreme Court in *Citizens United* did not address, and therefore did not overrule, the portion of the *Austin* decision that addressed the equal protection clause."). Because IRTL has failed to show that it is similarly situated to other entities not subject to § 68A.503, the Court concludes that IRTL is not likely to succeed on the merits of its equal-protection challenge to this section.

4. *Iowa's requirements of board (or equivalent) approval.*

IRTL argues that Iowa Code §§ 68A.404(2)(a)-(b), 68A.404(5)(g), and Form Ind–Exp–O "unconstitutionally burden[ ] the speech-related activities of corporations while not similarly regulating labor unions and other entities, such as LLCs and general partnerships, that are similarly situated." Compl. ¶ 52. Section 68A.404(a) provides that:

a. An entity, other than an individual or individuals, shall not make an independent expenditure or disburse funds from its treasury to pay for, in whole or in part, an independent expenditure made by another person without the authorization of a majority of the entity's board of directors, executive council, or similar organizational leadership body of the use of treasury funds for an independent expenditure involving a candidate or ballot issue committee. Such authorization must occur in the same calendar year in which the independent expenditure is incurred.

b. Such authorization shall expressly provide whether the board of directors, executive council, or similar organizational leadership body authorizes one or more independent expenditures that expressly advocate the nomination or election of a candidate or passage of a ballot

issue or authorizes one or more independent expenditures that expressly advocate the defeat of a candidate or ballot issue.

This section, on its face, does not discriminate between corporations and the other entities identified by IRTL. *See id.;* Compl. ¶ 52. IRTL argues, however, that this section really only targets corporations because, among other things, § 68A.404(5)(g) and Form Ind–Exp–O refer only to corporations. *See* Pl.'s Br. at 26–27. Section § 68A.404(5)(g) provides that:

A certification by an officer of the corporation that the board of directors, executive council, or similar organizational leadership body expressly authorized the independent expenditure or use of treasury funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred.

Form Ind–Exp–O includes a "Statement of Certification" that states, in relevant part, that "[i]f this expenditure was made by a corporation that the board of directors, executive council, or similar organizational leadership body expressly authorized the expenditure by resolution or other affirmative action this year." *See* Form Ind–Exp–O.

However, even if this requirement only applies to corporations, IRTL offers nothing more than a bare assertion that corporations are "similarly situated" to "labor unions and other entities, such as LLCs and general partnerships." Compl. ¶ 52. For all of the reasons discussed above in Section A(3)(b), the Court finds that such naked allegations are insufficient to carry IRTL's threshold burden. Therefore, IRTL is unlikely to succeed on the merits of its disparate treatment claim.[23]

23. IRTL also argues that this requirement is

unconstitutional as applied to IRTL because it

### B. *Other Dataphase Factors*

Because IRTL has not made a threshold showing that it is likely to succeed on the merits of its claims, the Court is not required to consider the remaining *Dataphase* factors. *Rounds,* 530 F.3d at 732. However, the Court finds IRTL has also failed to show that it will suffer irreparable harm if a preliminary injunction is not issued, that the balance of harms favors IRTL, or that the public interest would be served by granting an injunction.

### 1. *Irreparable harm.*

 "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Adam–Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). Therefore, "a party moving for a preliminary injunction is required to show the threat of irreparable harm." *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994) (citing *Modern Computer Sys.,* 871 F.2d at 738; *Dataphase,* 640 F.2d at 114). A "failure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction...." *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 320 (8th Cir.2009). IRTL's only argument on this

factor is that it is entitled to a presumption of irreparable harm because it has demonstrated that its rights have been violated. *See* Pl.'s Br. at 30. However, IRTL has not made such a demonstration. Therefore, it is not entitled to any such presumption and has failed to show that it will suffer irreparable harm absent an injunction.

### 2. *Balance of harms.*

 The balance of harms must "tip decidedly and clearly in [IRTL's] favor" to justify issuing a preliminary injunction. *See Lynch Corp. v. Omaha Nat'l Bank,* 666 F.2d 1208, 1212 (8th Cir.1981). IRTL argues that it "has demonstrated that the challenged provisions unconstitutionally infringe on its speech, association, and equal protection rights" and that the Defendants have no interest in "enforcing a law that is likely unconstitutional." Pl.'s Br. at 30–31. But, for all the reasons discussed above, IRTL has not demonstrated either that the challenged provisions violate IRTL's rights or that the challenged provisions are likely unconstitutional. Furthermore, Defendants have a valid interest in facilitating transparency in Iowa elections. *See Citizens United,* 130 S.Ct. at 916. This interest would be impaired if the Court granted IRTL's requested relief.[24] And, especially in light of the weakness of

---

has "no shareholders to protect," and is "an ideological corporation and its donors are fully aware of its political purposes, and in fact contribute precisely because they support these purposes." Pl.'s Br. at 28 (internal quotation marks omitted). However, IRTL has presented no evidence supporting this allegation, because IRTL has not established that its Executive Director, who verified the Complaint, is competent to testify as to the knowledge or intentions of IRTL's donors. *See* Compl. at 25.

**24.** IRTL argues that "[i]f the provisions challenged [in Count 2] are held unconstitutional, Iowa will retain an independent-expenditure

disclosure scheme similar to the federal scheme of event-driven reports." Pl.'s Br. at 12 n. 10. However, this assertion is contrary to the broad relief IRTL has requested. IRTL has, *inter alia,* asked this Court to enjoin Iowa Code § 68A.404(3) in its entirety. Mot. at 1. That section requires that organizations disclose their independent expenditures. Iowa Code § 68A.404(3). IRTL has failed to explain how an independent expenditure disclosure scheme could function without requiring that independent expenditures be disclosed. *See* Pl.'s Br. at 12 n. 10; *see also* Pl.'s Resp. to Notice of Additional Authority at 1–2 (Clerk's No. 30).

IRTL's case on the merits, the Court agrees with Defendants that changing the rules for the general election at the eleventh hour "would work an injustice on the electorate and candidates." *See* Defs.' Br. at 18. Therefore, the balance of harms favors Defendants, not IRTL.

3. *Public interest.*

Even if IRTL had shown that it was likely to succeed on the merits, IRTL has failed to show that the public interest weighs in favor of granting a preliminary injunction. Once again, IRTL makes no argument on this factor beyond its own assertion that it will succeed on the merits. Pl.'s Br. at 31. Because IRTL is not likely to succeed on the merits, IRTL has failed to show that the public interest would be served by granting a preliminary injunction. Furthermore, "the public has an interest in knowing who is speaking about a candidate shortly before an election," an interest which would be impaired—not served—by the broad relief requested by IRTL. *See Citizens United,* 130 S.Ct. at 915; *see also Swanson,* 741 F.Supp.2d at 1134–35, 2010 WL 3768041, at *15. Therefore, the Court finds that the public interest weighs against the granting of a preliminary injunction.

## III. CONCLUSION

IRTL has asked this Court to enjoin the enforcement of a duly-enacted statute and radically change Iowa's campaign finance rules mid-stream during an election. IRTL has failed to meet the burden required to obtain this extraordinary relief. After considering all of the *Dataphase* factors, the Court concludes that the balance of the equities do not support a preliminary injunction. Specifically, the Court finds that IRTL has failed to make the required threshold showing that it is likely to succeed on the merits of its claims. But even if it had made such a showing, IRTL would not be entitled to a preliminary injunction because it has failed to show that it will suffer irreparable harm if the preliminary injunction is not issued. Additionally, IRTL has failed to show that the balance of harms weighs in favor of issuing a preliminary injunction or that the public interest weighs in favor of issuing a preliminary injunction. Therefore, IRTL's motion for a preliminary injunction (Clerk's No. 2), is DENIED.

IT IS SO ORDERED.